UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cr-00270-TWP-DML |
| | ) |
| ANGELA BALDWIN, | ) -01 |
| | ) |
| Defendant. | ) |

**ENTRY ON MOTIONS IN *LIMINE*** 

This matter is before the Court on Motions in *Limine* filed by Plaintiff United States of America ("the Government") ([Filing No. 41](); [Filing No. 54]()) and Defendant Angela Baldwin ("Baldwin") ([Filing No. 42]()). Baldwin is set to be tried by a jury on October 25, 2021, on two counts of Sexual Exploitation of a Minor and Attempted Sexual Exploitation of a Minor, one count of Conspiracy to Produce Visual Depictions of Minors Engaging in Sexually Explicit Conduct, and one count of Possession of Visual Depictions of Minors Engaging in Sexually Explicit Conduct. The parties seek preliminary rulings from the Court regarding the admissibility of certain evidence and defenses. For the following reasons, the Government's Motions are **granted** and Baldwin's Motion is **granted in part and denied in part**.

## I.   LEGAL STANDARD

"[J]udges have broad discretion in ruling on evidentiary questions during trial or before on motions in *limine*." *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). The Court excludes evidence on a motion in *limine* only if the evidence clearly is not admissible for any purpose. *See Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). Unless evidence meets this exacting standard, evidentiary rulings must be deferred until

trial so questions of foundation, relevancy, and prejudice may be resolved in context. *Id.* at 1400–01. Moreover, denial of a motion in *limine* does not necessarily mean that all evidence contemplated by the motion is admissible; rather, it only means that, at the pretrial stage, the Court is unable to determine whether the evidence should be excluded. *Id.* at 1401.

## II.     DISCUSSION

The Government seeks a preliminary ruling from the Court regarding the anticipated defense of duress and the admissibility of Rule 609 criminal history evidence. Baldwin seeks a preliminary ruling from the Court regarding the admissibility of "other bad acts" evidence. The Court will first address the Government's Motions and then turn to Baldwin's Motion.

### 1.     **Government's Motion in *Limine* – Defense of Duress**

In its first Motion in *Limine*, the Government argues that Baldwin should be precluded from introducing any evidence of duress at the trial of this matter. Duress is an affirmative defense for which Baldwin bears the burden of establishing all elements. The Government contends that Baldwin cannot establish each element of the affirmative defense, and thus, no evidence of duress should be allowed at trial as it will only confuse the jury.

As noted by the Government, the conduct of a trial and its direction are subject to the sound discretion of the trial court, and a district judge does not commit error by limiting the scope of the trial and excluding an affirmative defense until such time as the defendant makes a sufficient showing or proffer of evidence. *United States v. Blassingame*, 197 F.3d 271, 280 (7th Cir. 1999).

> [A] district court may properly deny a defendant the opportunity to introduce evidence supporting an affirmative defense by granting a pre-trial motion in *limine*, so long as the facts proffered by the defendant to support the defense are insufficient as a matter of law to meet the minimum standard as to each of the elements of that defense.

*United States v. Sahakian*, 453 F.3d 905, 909 (7th Cir. 2006); *see also United States v. Bailey*, 444 U.S. 394, 416 (1980) (where a proffer is insufficient to carry the defendant's burden with respect to one or more elements of an affirmative defense, then testimony regarding all of the elements of the defense is properly excluded). The burden of establishing an affirmative defense rests with the defendant, and each of the elements of that defense must be supported by sufficient evidence to allow a reasonable jury to find the defense proved before an instruction on the defense can be given. *United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996).

  The defense of duress requires a defendant to establish two elements: she reasonably feared immediate death or serious bodily injury, and she could have avoided the immediate death or serious bodily injury only by committing the criminal act charged. Fear alone will not legally justify the commission of the criminal act. *United States v. Tanner*, 941 F.2d 574, 587 (7th Cir. 1991). Moreover, where a defendant commits a continuing offense, the defendant must cease committing the offense immediately once the claimed duress loses its coercive force. *See United States v. Bailey*, 444 U.S. 394, 415 (1980). If there is a reasonable legal alternative to violating the law or a chance to refuse to do the criminal act, the defense of duress will fail. *United States v. Jocic*, 207 F.3d 889, 892 (7th Cir. 2000) (citing *Bailey*, 444 U.S. 394).

  To support its Motion in *Limine*, the Government argues there are no facts to show the existence of an imminent threat to Baldwin. Rather, there are text messages over many years in which Baldwin and her ex-husband and co-conspirator Russell Taylor ("Taylor") discuss sexually exploiting minor children and share images of the victims engaged in sexually explicit conduct. For at least a portion of this time period (approximately June 2010 to August 2012), Baldwin lived in Connersville, Indiana, more than sixty miles away from Taylor who was in Indianapolis. Instead of staying away, Baldwin voluntarily visited Taylor on multiple occasions and ultimately moved

to Indianapolis to further her relationship with him. Not only did Baldwin have numerous opportunities to ask for help, but she also had the means to simply escape if a threat was made. However, Baldwin never asked anyone for help. Furthermore, during most of her relationship with Taylor, Baldwin worked as a 911 dispatcher for various counties and was thus in close proximity to numerous law enforcement officers. She discussed friendships with some of these law enforcement officers in her text messages, yet Baldwin never sought help from any of these officers. Baldwin also cannot establish the second element of duress as she had multiple opportunities to escape or to seek assistance from law enforcement and therefore defeat the "threat" without committing the criminal acts. Her failure to seek help or to flee precludes her from establishing the second element of the defense as a matter of law.

In response, Baldwin states that she and Taylor, her alleged co-conspirator, were involved in an intimate relationship during all times relevant to this matter. They eventually married and lived together for a part of the time. Baldwin argues that all of her communications of alleged sexual exploitation and discussions of her alleged acts of sexual exploitation were with Taylor; there are no communications with any other individual wherein Baldwin discusses her sexual interest in children, her deviant sexual interests, or perpetrating against children. Baldwin argues that all of the communications reveal that her acts were committed for Taylor or at his direction. He gave her instructions and directions, and in one communication, Baldwin asked Taylor to not be disappointed. She asserts that, while some acts were allegedly without Taylor present, these acts were relayed to Taylor in real time and sometimes at his direction. She contends that the text messages reveal that she was doing these things at Taylor's behest.

Baldwin then asserts,

> The evidence in this matter will show that Ms. Baldwin feared Mr. Taylor. Mr. Taylor would often get "physical" with Ms. Baldwin. At one point, he slammed her

4

head into the wall. He killed her dog. The emotional abuse was worse than the physical abuse. Ms. Baldwin participated in the conduct because she was scared Mr. Taylor would physically abuse her or he would leave her which would leave her homeless and with no ability to financially support herself.

([Filing No. 52 at 2](#).)

Baldwin points out that the district court judge is "the gatekeeper, if you will, [of] ensuring that admitted evidence is relevant . . . and assessing whether the defense evidence, if believed, is legally sufficient to support the affirmative defense." *United States v. Dingwall*, 2021 U.S. App. LEXIS 22639, at *39 (7th Cir. July 30, 2021). Yet, in this role, it is critical that the judge "take care not to take over the role of a jury in weighing evidence and deciding the credibility of testimony." *Id.*

Baldwin argues that her case is distinguishable from the *Tanner* case which involved prisoners. She points out that the Seventh Circuit recently stated,

> The prison cases are not helpful, let alone controlling, guides for battering by an intimate partner. With intimate partner violence, there is more than a "generalized fear" or "rumor" of violence, and the assailant is known. The battered person's fear that the violence may occur at some "unspecified time in the future" is part of the coercive effect. And the risk of violent chaos in prison resulting from permitting incarcerated people to raise a duress defense with only a "generalized threat" is profoundly different.

*Id.* at *38. Baldwin contends that this case involves her fear of being physically hurt by Taylor, her significant other; the case does not involve some nebulous fear of an unknown assailant. Taylor had battered her before and could do it again if she failed to satisfy his desires or if she did not meet his demands or requests.

Baldwin then concludes,

> The government first claims that Ms. Baldwin cannot make a sufficient showing of duress because she lived some distance away from Mr. Taylor when they first started dating and still pursued a relationship with him. The Government claims that this necessarily means that Mr. Taylor was not an imminent threat to Ms. Baldwin. On the contrary, many victims of domestic violence pursue, date and

5

>marry their abusers. This is the touchstone of domestic violence. Victims stay with their abusers, they don't get help and they don't see the problem in the relationship. Thus, the government's claim misses the mark. Ms. Baldwin will testify that Mr. Taylor had committed physical violence against her, she was fearful of him and what he might do at any given time.
>
>Second, the Government claims that Ms. Baldwin cannot establish that she had to participate in the conduct to avoid serious bodily injury or death because again because she did not leave Mr. Taylor nor did she report his abuse. Again, the Government's arguments represent a complete misunderstanding of domestic violence. *See Dingwall*.
>
>The Government's misunderstanding of domestic violence should not lead this Court to deprive Ms. Baldwin of an opportunity to offer evidence of Mr. Taylor's history of violent behavior, her fear of Mr. Taylor and its role on her conduct in this matter. Before precluding her defense, Ms. Baldwin would request that the Court hear her proffered testimony about her duress.

(Filing No. 52 at 3–4.)

The Government replies that Baldwin's response is filled with factual inaccuracies that undermine her argument. She argues that all of her communications of alleged sexual exploitation, sexual interest in children, and her deviant sexual interests were only with Taylor; there are no communications with any other individuals. And she argues all of the communications reveal that her acts were committed for Taylor or at his direction. However, the Government argues, Baldwin is a predator attracted to children, and there are numerous text messages that reveal her interests were pursued independent of Taylor and for her own sexual fulfillment. In March 2014, Baldwin sent a text message to "J.F." expressing sexual interest in J.F.'s toddler son. In June 2014, Baldwin sent a text message to "M.H." expressing interest in bestiality, a deviant sexual interest. Additionally, in November 2012, Baldwin texted Taylor expressing her own sexual interest in Taylor's sons.

The Government further replies that Baldwin's vague claims about a fear of Taylor are undermined by her own statements to the Government and to the United States Probation Office.

>In 2015, the Defendant described Taylor to the United States Probation Officer preparing Taylor's presentence investigation report as "a loving,

> compassionate, and funny man." The Defendant expressed her "unconditional love for [Taylor]" to the Probation Officer and stated that there was "'a lot of good' in [Taylor]." These statements are wholly inconsistent with the persona of a battered and abused woman that the Defendant is attempting to adopt now. Indeed, at the time the Defendant made those statements Taylor had been in pretrial detention for months and was awaiting sentencing in federal court. He no longer posed any threat to the Defendant and she would have no reason to lie for him – and certainly no reason to lie to *help* the man who was purportedly abusing her.
>
> Beyond that, the Defendant stated in a May 2015 proffer that the first time Mr. Taylor got physical with her was in May 2014. Thus, anything that the Defendant did *prior* to May 2014 was by her own volition. The only count that occurred *after* Taylor allegedly began abusing the Defendant is Count 2, and the jury can judge the Defendant's demeanor in those videos for themselves.

(Filing No. 56 at 4.)

The Government asserts that Baldwin's reliance on *United States v. Dingwall* is misplaced, and that case is readily distinguishable. Dingwall was seeking to present expert testimony about battered woman's syndrome in support of her duress defense; Baldwin, however, has no such expert evidence. Baldwin's argument attempts to extend *Dingwall* beyond its narrow holding, which is that "expert testimony on battering and its effects may be offered in support of a duress defense because it may help a jury understand the objective reasonableness of a defendant's actions in the situation she faced . . . ." *Dingwall*, 2021 U.S. App. LEXIS 22639, at *23. Baldwin has no expert evidence to support a battered woman's syndrome theory for duress, and she cannot self-diagnose such a syndrome for a duress defense. Thus, the Government argues, Baldwin has failed to support the elements of duress, and she should not be permitted to present evidence of duress during trial.

The Court concludes that, at this stage, based upon what has been presented by the parties, it is not proper to allow Baldwin to present evidence of a duress defense. The facts proffered by Baldwin are insufficient to support each of the elements of a duress defense: that she reasonably feared immediate death or serious bodily injury and that she could have avoided the immediate

7

death or serious bodily injury only by committing the criminal act charged. Baldwin vaguely asserts that Taylor would often get "physical" with her. She points to one instance where Taylor slammed her head into the wall and that he killed her dog. She provides no additional context. The Government has pointed to Baldwin's own proffer statement wherein she acknowledged the first abuse by Taylor happened after much of her criminal activity already had occurred. At this stage, Baldwin has failed to support the elements of a duress defense, and therefore, the Court **grants** the Government's Motion in *Limine* to preclude evidence or argument of a duress defense. This is a preliminary ruling, and if Baldwin believes she has sufficient evidence to support the defense, she may make a proffer outside the presence of the jury.

2. **Government's Motion in *Limine* – Rule 609 Criminal History Evidence**

Next, the Government asks the Court to limit, under Federal Rule of Evidence 609, impeachment evidence regarding the criminal history of particular witnesses. The Government points out that Rule 609 provides,

> The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
>
> (1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
>
> (A) must be admitted, subject to Rule 403, . . . in a criminal case in which the witness is not a defendant . . . ; and . . .
>
> (2) for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—dishonest act or false statement.

F.R.E. 609(a). The Government asserts that "[t]he law in the Seventh Circuit is very clear that, in impeaching a witness with a prior conviction, a party 'may identify the particular felony charged, the date and the disposition.'" *United States v. Rios*, 2007 WL 9724443, at *1 (C.D. Ill. May 15, 2007) (quoting *United States v. Smith*, 454 F.3d 707, 716 (7th Cir. 2006)).

8

The Government explains that it intends to call during its case-in-chief four of Baldwin's minor victims and cooperating co-conspirator Taylor. Some of these witnesses have a criminal history, and the Government asks the Court to limit any cross-examination regarding criminal history to the particular felony charged, the date, and the disposition.

As to Minor Victim 1, the Government notes that she was convicted of misdemeanor possession of marijuana on November 19, 2014. She was convicted of misdemeanor theft on January 28, 2019, and this crime does not have as an element fraud or false statements. On August 5, 2019, Minor Victim 1 was convicted of misdemeanor possession of cocaine. On June 22, 2020, a probation violation was filed against Minor Victim 1, and she admitted the probation violation on October 20, 2020, and was sentenced to 140 days in jail. On May 11, 2020, Minor Victim 1 was convicted of felony possession of methamphetamine, and she was sentenced to ninety-four days in jail.

As to Minor Victim 3, the Government notes that she was convicted of misdemeanor operating a vehicle under the influence of a Schedule I or II controlled substance on August 26, 2019, and she was sentenced to fourteen days in jail.

As to Taylor, the Government notes that he was convicted on June 30, 2021, of multiple counts of sexual exploitation of a minor, distribution of visual depictions of minors engaging in sexually explicit conduct, receipt of visual depictions of minors engaging in sexually explicit conduct, possession of visual depictions of minors engaging in sexually explicit conduct, and conspiracy to possess visual depictions of minors engaging in sexually explicit conduct. He is awaiting sentencing for these offenses.

The Government argues that, of all these convictions of these witnesses, the only convictions that may be used for impeachment purposes are Minor Victim 1's May 11, 2020

conviction for felony possession of methamphetamine and Taylor's June 30, 2021 convictions. As to these convictions, the Government argues all that is admissible are the names of the crime charged, the date, and the disposition of the case. *See United States v. Fawley*, 137 F.3d 458, 473 (7th Cir. 1988); *United States v. Robinson*, 8 F.3d 398, 409 (7th Cir. 1993). Thus, the Court should limit any cross-examination of Minor Victim 1 and Taylor regarding their criminal histories to the name of the crimes charged, the date, and the disposition of the case. The Government points out that it has tendered a proposed limited instruction to offer during trial.

The Government further asserts that the remaining criminal history of Minor Victim 1 and Minor Victim 3's one misdemeanor conviction are not admissible, so the Court should not allow any discussion into those convictions or criminal history.

Based on the clear case law of the Seventh Circuit and the parameters of Rule 609(a), the Court **grants** the Government's Motion in *Limine* concerning the criminal histories and convictions of Minor Victim 1, Minor Victim 3, and Taylor. The only convictions that may be used for impeachment purposes are Minor Victim 1's May 11, 2020 conviction for felony possession of methamphetamine and Taylor's June 30, 2021 convictions, and any cross-examination of Minor Victim 1 and Taylor regarding their criminal histories is limited to the name of the crimes charged, the date, and the disposition of the case.

**3.     Baldwin's Motion in *Limine***

Baldwin asserts that the discovery in this case involves thousands of text messages with her ex-husband and alleged co-conspirator Taylor. The communications between Baldwin and Taylor involve a variety of sexual topics including each other's sexual interests. Some videos of a sexual nature were recovered from electronic devices belonging to Baldwin or Taylor. These videos do not depict any of the victims in this matter and do not constitute child pornography.

Baldwin explains that she anticipates the Government may offer evidence of her communications with Taylor wherein they express deviant sexual interests such as that in animals or incest. Baldwin also anticipates that the Government may offer evidence of videos involving those deviant interests. Baldwin argues that her alleged deviant sexual interests in that other than children is not relevant in this case under Federal Rule of Evidence 401. She asserts that an individual's sexual desires in "less than mainstream sex acts" does not make that person more or less likely to sexually perpetrate against a child.

Furthermore, Baldwin contends, even if relevant, her alleged interest in bestiality or incest constitutes "other bad acts" prohibited by Federal Rule of Evidence 404. Rule 404(b)(1) states, "Evidence of any crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Rule 404(b)(2) allows evidence of a crime, wrong, or other act when it is used "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Baldwin argues that any taboo sexual interests, such as bestiality or incest, expressed by her or her alleged co-conspirator would be offered only to prove her bad character in this matter. Thus, such evidence is forbidden under Rule 404(b)(1).

Baldwin further argues that, should the Court consider allowing such evidence under Rule 404(b)(2), the evidence still is inadmissible under Rule 403 because any probative value of evidence of Baldwin's other deviant sexual interests is outweighed by its prejudicial effect. Therefore, Baldwin concludes, evidence of her deviant sexual interests is not admissible in this matter, and she asks the Court to prohibit the Government and any of its witnesses to offer testimony of or refer to Baldwin's sexual deviant interests.

The Government responds that it intends to introduce evidence of bestiality in only two instances. First, it intends to present evidence of communications from January 2013 when Baldwin and Taylor exchanged text messages while Taylor was out of town and Baldwin's daughter came to stay at the house with Baldwin. Baldwin and Taylor exchanged messages about staging the house and setting up cameras to record Baldwin's minor daughter engaging in sexual activity. Their text message exchange also included messages about recording the daughter engaging in bestiality.

The Government argues that Baldwin and Taylor's communications discuss their sexual interest in her minor daughter and conspiring to surreptitiously record her engaging in sexually explicit conduct, including bestiality, which would constitute sexually explicit conduct under 18 U.S.C. § 2256(2)(A)(ii). Thus, the communications are evidence of Count 3 in the Indictment, conspiracy to produce visual depictions of minors engaging in sexually explicit conduct. The text messages are relevant and direct evidence of the charged offense. Rules 404(b) and 403 do not prohibit the introduction of this evidence.

The Government further responds that the second instance where it may seek to introduce evidence of bestiality is if Baldwin makes a trial challenge seeking to suppress evidence seized from the residence that she shared with Taylor. The Indiana state crime of bestiality was the basis for the state search warrant, and it was during this search that child pornography was discovered in the residence. Given that bestiality was the basis for the search warrant that led to the seizure of child pornography, the bestiality evidence is relevant to admissibility. Therefore, Rule 401 does not preclude admission of this evidence, and because the jury would not be present while the Court considered any suppression-type argument, Rules 403 and 404(b) would not be implicated.

As to Baldwin's argument about evidence of incest, the Government notes it is not clear what specific evidence Baldwin seeks to exclude. Baldwin has been charged with sexually exploitation of her biological niece in Count 2 of the Indictment, and in Count 3, she has been charged with conspiring to sexually exploit multiple minor victims, including her biological daughters. Thus, evidence of Baldwin's conduct involving these children is admissible because it is direct evidence of the charged offenses.

Upon consideration of the parties' arguments, the Court concludes that the Government's position is well-taken. The specific communications between Baldwin and Taylor, which include references to bestiality and incest, that are directly relevant to the offenses charged in the Indictment are admissible evidence. There is nothing unfairly prejudicial in allowing this direct evidence to be offered during trial. Baldwin has failed to show that the evidence clearly is not admissible for any purpose. Thus, Baldwin's Motion in *Limine* is **denied** as to the communications listed above, and the Government may offer those communications during trial. The Court will grant Baldwin's Motion in Limine with respect to all other evidence of bestiality and incest, as the probative value of such evidence is outweighed by the undue prejudice of

### III.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Government's Motions in *Limine* ([Filing No. 41](); [Filing No. 54]()). Baldwin's Motion in *Limine* ([Filing No. 42]()) is **GRANTED in part** and **DENIED in part.** It is **denied** with respect to the evidence of bestiality and incest listed above as relevant; it is **granted** with respect to all other evidence of bestiality and incest. An order in *limine* is not a final, appealable order. If the parties believe that evidence excluded by this Order becomes relevant or otherwise admissible during the course of the trial, counsel may approach the bench and request a hearing outside the presence of the jury. Likewise, if the parties believe that

13

specific evidence is inadmissible during the course of the trial, counsel may raise specific objections to that evidence.

**SO ORDERED.**

Date:  10/4/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov

Bradley Paul Shepard
UNITED STATES ATTORNEY'S OFFICE
brad.shepard@usdoj.gov

Dorie Ann Maryan
MARYAN LAW
doriemaryan@gmail.com